UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| JOSEPH J. FENCHER, JR., | ) |
| Petitioner, | ) |
| v. | ) Civil Case No. 13-11937-RGS |
| GARY RODEN, | ) |
| Respondent. | ) |

**REPORT AND RECOMMENDATION ON**
**PETITION FOR WRIT OF HABEAS CORPUS**

June 22, 2015

On July 31, 2013, Joseph J. Fencher, Jr. filed, pro se, a petition for a writ of habeas corpus under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Dkt. No. 1 ("Petition" or "Pet.").[1] Respondent Gary Roden opposes the Petition. Dkt. No. 25 ("Resp't Mem."). For the following reasons, the Court recommends that the District Judge assigned to this case deny the Petition.[2]

**I.  PROCEDURAL BACKGROUND**

On April 9, 2010, a Massachusetts Superior Court jury convicted Fencher of one count of distribution of cocaine, one count of possession with intent to distribute cocaine, and two counts of a drug violation near a school zone or park. Dkt. No. 12 (Supplemental Answer, "S.A.") at 5–7. On May 3, 2010, Fencher was found guilty of four counts of being a habitual criminal offender at a jury-waived trial. S.A. 5, 8. He was sentenced to two concurrent sentences of ten

---

[1] When citing to the Petition, the Court refers to the docket entry page numbers rather than the page numbers of the original document.

[2] On September 19, 2013, the District Court referred the present action to this Court for report and recommendation. Dkt. No. 7.

1

years for the distribution and possession counts, followed by two concurrent sentences of fifteen years on the school zone counts. S.A. 6. On February 24, 2012, the Massachusetts Appeals Court ("Appeals Court") affirmed Fencher's conviction. S.A. 183–85; Commonwealth v. Fencher, 81 Mass. App. Ct. 1116 (2012). On May 3, 2012, the Supreme Judicial Court ("SJC") denied further review. S.A. 218; Commonwealth v. Fencher, 462 Mass. 1102 (2012).

On July 31, 2013, Fencher filed the instant petition. On February 28, 2014, in support of the Petition, Fencher filed a memorandum which asserted several additional grounds for relief. Dkt. No. 23 ("Pet. Mem."). On April 29, 2014, Respondent filed an opposing memorandum, seeking denial of the Petition.

## II. FACTUAL BACKGROUND[3]

The Appeals Court summarized the underlying facts of Fencher's offenses as follows:

> In November of 2007, the Worcester police department recorded several multi-party phone calls among Christopher Thomas, Thomas' girlfriend Sandy Armstrong, and [Fencher]. Thomas was incarcerated at the time of the calls. Three phone conversations, all held November 13, 2007, were introduced as evidence against [Fencher] at trial. In the first call, Thomas and Armstrong discussed setting up a three-way call with a person named "Joe," which is the first name of [Fencher]. In the second call, in which [Fencher] participated by his own admission, Thomas informed Armstrong that he left her "a little something."[4] Also, in this call, [Fencher], Armstrong and Thomas discussed that if Armstrong was "to call him if she needs any help."[5] During the third call, Thomas told Armstrong that while Thomas was imprisoned, Armstrong was to "deal with Joe" and made a reference to "re-upping"[6].

---

[3] Absent clear and convincing evidence to the contrary, the recitation of the facts by the Massachusetts Appeals Court is presumed to be correct. See 28 U.S.C. § 2254(e)(1); Gunter v. Maloney, 291 F.3d 74, 76 (1st Cir. 2002); Evans v. Thompson, 518 F.3d 1, 3 (1st Cir. 2008).

[4] The Appeals Court inserted the following footnote: "One of the investigating police officers testified that his interpretation of this statement was that it referred to cocaine."

[5] The Appeals Court inserted the following footnote: "It is not clear from the record if the "him" in this call is [Fencher] or Thomas."

[6] The Appeals Court inserted the following footnote: "The defendant testified at trial that this

2

> Additionally, in the third call, Armstrong asserted that someone by the name of "Joey" was harassing her and told Thomas, "When, you get out, you got to check that—check that nigger." Finally, on this third call, Armstrong told Thomas that she had just "re-upped" and said, "I don't want to talk about it on the phone."
>
> As a result of these recorded phone calls, the Worcester police called Armstrong's phone on November 26, 2007, to set up an undercover drug purchase. The officer who made the calls testified that, while speaking to Armstrong about the price of "a ball,"[7] he heard [Fencher] state in the background, "If he knows YG,[8] he knows it's 150 for a ball." The officer also testified that in a subsequent call regarding the upcoming purchase, he heard a voice in the background, that he recognized as [Fencher's], state, "Tell him to watch out for the black car. When we get there, have him get out of his car and get in with us." A short time later, a black Mercury drove into a parking lot where the undercover officer was waiting. Armstrong exited the Mercury, entered the officer's truck, sold him cocaine, returned to the Mercury, and was arrested there along with [Fencher]. After removing [Fencher] from the car, an officer at the scene remarked that [Fencher] "must have had [the drugs] in his hand," to which [Fencher] quipped, "Get it right. I was sitting on it. I wasn't holding on—I didn't have it in my hand." [Fencher], in response to the officer's telling him he nevertheless possessed it said, "So what? I'll get out."
>
> At trial, [Fencher] admitted that he was one of the parties heard on the recorded three-way calls and that he was aware that the term "re-up" meant to replenish a drug supply. [Fencher] also testified that Thomas had asked him to "look out" for Armstrong and that he did not go by the name "Joey."

S.A.183; Fencher, 81 Mass. App. Ct. 1116, at *2.

### III. STANDARD OF REVIEW

The Court liberally construes the Petition because Fencher is appearing pro se. Haines v. Kerner, 404 U.S. 519, 520–21 (1972). Fencher cannot obtain federal habeas relief under 28

---

term referred to the replenishment of a drug supply."

[7] The Appeals Court inserted the following footnote: "A police officer testified that 'a ball' referred to 3.5 grams of cocaine."

[8] The Appeals Court inserted the following footnote: "'YG' refers to Thomas."

3

U.S.C. § 2254(d) for any claim that a state court "adjudicated on the merits" unless he can show that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); RaShad v. Walsh, 300 F.3d 27, 34 (1st Cir. 2002).

The language barring federal review if a petitioner's claim was "adjudicated on the merits" is "in part, a reference to the long standing rule that federal courts do not review state court decisions which rest on 'independent and adequate state grounds.'" Simpson v. Matesanz, 175 F.3d 200, 205–206 (1st Cir. 1999) (quoting Trest v. Cain, 522 U.S. 87 (1997)). "Such independent and adequate grounds exist where 'the state court declined to hear the federal claims because the prisoner failed to meet a state procedural requirement.' In such a case, 'considerations of comity and federalism bar the federal court's review.'" Id. at 206.

The "contrary to" prong is satisfied when the state court "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result." Id. at 406. The "unreasonable application" prong is satisfied if the state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

However, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington v. Richter, 562 U.S. 86, 102 (2011).

4

## IV.  DISCUSSION

### A.  Ground One

The Petition advances the following as Ground One:

> Whether the admission of the jailhouse conversation which were recorded outside the pendencey [sic] of a possible joint venture and which were vague and not relevant violated the confrontation rights of the defendant.

Pet. at 5.  Fencher is not entitled to habeas relief on this ground.

#### 1.  Due Process

Fencher argues that the trial court improperly admitted three secretly recorded conversations among Fencher, Thomas, and Armstrong, resulting in a constitutional due process violation.[9]  First, Fencher argues that the trial judge erred because the conversations were inadmissible hearsay not subject to an exception for statements made in furtherance of a joint venture.  Pet. Mem. at 1–16.  Second, Fencher appears to assert that any mention of "Joe" in the conversations was vague and irrelevant.[10]  Pet. at 5; S.A. 39–41.

"Errors based on violations of state law are not within the reach of federal habeas petitions unless there is a federal constitutional claim raised."  Kater v. Maloney, 459 F.3d 56, 61 (1st Cir. 2006) (citations omitted).  Habeas relief may be available where the application of state law rises to the level of a due process violation.  Kater v. Maloney, 459 F.3d 56, 61 (1st Cir. 2006).  However, the state court's ruling must be "so arbitrary or capricious as to constitute an independent due process . . . violation."  Coningford v. Rhode Island, 640 F.3d 478, 484 (1st Cir.

---

[9] The indictment charged Fencher, Thomas, and Armstrong as co-defendants.  However, based on Fencher's motion, the trial judge severed Fencher's criminal case from that of Thomas and Armstrong.  S.A. 5; Resp't Mem. at 1 n.1.

[10] Fencher does not directly address the second argument and, in fact, appears to take a different view of the contested statements in his memorandum.  See Pet. Mem. at 7 (stating that "Deal with Joe" referred to Fencher "looking out for his friend[']s lady").  Nonetheless, given that Fencher is pro se, the Court addresses the relevance argument as well.

5

2011) (citation omitted). "The Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly." Id. (citation and internal quotation marks omitted). "[T]he absence of an on-point pronouncement from the Supreme Court leaves hanging by the slimmest of threads the petitioner's claim that the state court's admission" of contested evidence constituted a violation of due process." Id. at 485 (citation omitted). In evaluating the petitioner's claim, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting this presumption by clear and convincing evidence. Id.

Here, because Fencher argues that the admission of the conversations was in violation of state law, habeas relief is only available if the state court's ruling was so arbitrary or capricious as to work a denial of Fencher's constitutionally secured right to a fair trial. As to Fencher's first argument, the Appeals Court set out the relevant Massachusetts law[11]:

> "Out-of-court statements by joint criminal participants are admissible against the others if the statements are made during the pendency of the criminal enterprise and in furtherance of it." Commonwealth v. Clarke, 418 Mass. 207, 218 (1994). To admit these statements, the Commonwealth must prove the existence of a joint criminal venture by a preponderance of the evidence, without using the statements in question. Commonwealth v. Stewart, 454 Mass. 527, 534 (2009). Also, "[m]atters surrounding the history of the [joint venture], including statements of [joint venturers], may be admissible even if they predate the conspiracy." Commonwealth v. McLaughlin, 431 Mass. 241, 248 (2000). The judge has discretion to determine whether this evidence is too remote to be relevant, and his decision will not be disturbed absent

---

[11] Fencher's memorandum cites Rule 801(d)(2)(E) of the Federal Rules of Evidence. Pet. Mem. at 2, 11; Fed. R. Evid. 801(d)(2)(E) (statement offered against an opposing party and "made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay). However, the applicable rule is the state rule as articulated by the Appeals Court and as set out in the analogous state statute. Mass. R. Evid. 801(d)(2)(E) (statement offered against a party by "a coconspirator or joint venturer made during the pendency of the cooperative effort and in furtherance of its goal when the existence of the conspiracy or joint venture is shown by evidence independent of the statement" is not hearsay).

6

"palpable error." Ibid.

S.A.184; Fencher, 81 Mass. App. Ct. 1116, at *2. The Appeals Court then explained that the Commonwealth had proven by a preponderance of the evidence, exclusive of the recorded phone calls, that there was a joint venture to possess cocaine with the intent to distribute and to distribute cocaine. Id. Further, the Appeals Court noted that the trial judge "found the tapes to be relevant to the Commonwealth's joint venture theory as they demonstrated communications occurring two weeks before the arrest between the defendant, Armstrong, with whom the defendant was later arrested in the presence of drugs, and Thomas." Id. The Appeals Court concluded that "[g]iven the [trial] judge's well reasoned rationale for finding the conversations relevant to the joint venture, we cannot say that there was 'palpable error.'" Id.

Citing state law on the definition of relevance, the Appeals Court further concluded that the trial judge's finding of the relevance of the mention of someone named "Joe" in the conversations was not in error. Id. The Appeals Court explained that the conversations' "terminology, use of [Fencher's] first name, and [Fencher's] testimony that at least some of the conversation referred to drugs, endowed this evidence with a 'rational tendency to prove' that [Fencher] was involved in a scheme to sell drugs with Armstrong and Thomas." Id. The Appeals Court also noted that there was no unfair prejudice because Fencher admitted to participating in one of the conversations. Id.

In his memorandum, Fencher argues that the conversations could not have been part of the joint venture because there was no connection between the conversations and the undercover drug purchase that occurred thirteen days later. Pet. Mem. at 3–4, 18. However, under Massachusetts law, statements made prior to a joint venture may be admissible where the statements shed light on the history of the joint venture. Commonwealth v. McLaughlin, 431

7

Mass. 241, 248 (2000) (citation omitted).

Fencher also argues that there was no evidence of a joint venture to support the application of the hearsay exception. For example, Fencher points to a portion of Officer Towns' testimony at trial wherein he stated that there was no discussion of drug activity during certain recorded conversations between Thomas and Fencher. Pet. Mem. at 4–5. Fencher also offers other interpretations of various phone calls and asserts they had nothing to do with drug dealing. Id. at 7, 12, 15–16, 18–20, 27–28.

The Appeals Court's findings are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1). While Fencher has presented his own interpretation, it is simply not enough to overcome the deference owed to the appellate court's ruling on a state law issue. Given the other evidence of record, it was well within the universe of reasonable evidentiary rulings to admit the statements. This Court concludes that Fencher has not met his burden of rebutting the presumption that the Appeals Court's findings are correct.

This Court further finds that Fencher's claims present only issues of state law that are beyond the review of this Court and, even if they were subject to review, the Appeals Court's decision as to these issues was not so arbitrary and capricious as to constitute a federal due process violation. Accordingly, the Petition should be denied to the extent that it attempts to advance a due process argument in Ground One.

2. Confrontation Clause

Fencher also contends that the admission of the recorded conversations resulted in a violation of his rights under the Confrontation Clause of the Sixth Amendment. The Appeals Court rejected this claim because it noted that in these types of cases, the "admission of statements of a joint venturer against the other participants does not violate a defendant's constitutional rights." S.A. 184; Fencher, 81 Mass. App. Ct. 1116, at *3. This decision was

neither contrary to nor an unreasonable application of clearly established federal law.

The Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In Crawford v. Washington, the Supreme Court held that the Confrontation Clause to the Sixth Amendment barred "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 53–54 (2004).

A critical part of the Crawford holding

> is the phrase "testimonial statements." Only statements of this sort cause the defendant to be a "witness" within the meaning of the Confrontation Clause. It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation clause.

United States v. Soto, 720 F.3d 51, 57–58 (1st Cir. 2013) (quoting Davis v. Washington, 547 U.S. 813, 821 (2006)). "To rank as 'testimonial,' a statement must have a 'primary purpose' of 'establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." Bullcoming v. New Mexico, __ U.S. __, 131 S. Ct. 2705, 2714 n.6 (2011) (quoting Davis, 547 U.S. at 822).

Prior to the decision in Crawford, the Supreme Court held that the admission of a co-defendant's extrajudicial confession that incriminates the defendant may violate the defendant's Confrontation Clause rights. Bruton v. United States, 391 U.S. 123, 127–28 (1968)). However, the holding in Crawford made it clear that the defendant's confrontation rights are only implicated where the extrajudicial statement is testimonial. Crawford, 541 U.S. at 53–54. The Supreme Court has since reiterated that certain statements—such as those made unwittingly by a co-conspirator to a government informant and secretly recorded—are "clearly nontestimonial."

Davis, 547 U.S. at 825 (citing Bourjaily v. United States, 483 U.S. 171, 181–184 (1987)). Further, the First Circuit has held that statements made during private conversations are generally nontestimonial. See, e.g., Horton v. Allen, 370 F.3d 75, 84 (1st Cir. 2004). For example, statements made by a co-conspirator during a telephone conversation with his mother are nontestimonial, despite the fact that he knew or should have known that the conversation was being recorded. United States v. Castro-Davis, 612 F.3d 53, 65 (1st Cir. 2010). In addition, "casual remarks which the declarant would not reasonably expect to be available for use at a later trial" are also nontestimonial. United States v. Hansen, 434 F.3d 92, 100 (1st Cir. 2006) (citation omitted).

Here, the Appeals Court addressed Fencher's Confrontation Clause argument, citing a state court decision that correctly applied federal law, including Bruton. S.A. 184; Fencher, 81 Mass. App. Ct. 1116 at *3 (citing Commonwealth v. Beckett, 373 Mass. 329, 337 (1977)). The statements made during the three secretly recorded conversations among Thomas, Armstrong, and Fencher comprised of statements unwittingly made to other co-conspirators, rather than solemn declarations to government officials, confessions made during police interrogation, or formalized documents such as affidavits. Thomas and Armstrong did not make the contested statements under circumstances in which an objectively reasonable person would believe that the statements would later be used at a trial. Thus, the admitted conversations do not contain any testimonial statements within the scope of the Confrontation Clause, and Crawford is inapplicable.

Accordingly, the Appeals Court's decision as to the Confrontation Clause claim was neither contrary to nor an unreasonable application of clearly established federal law, and the Petition should be denied on this ground.

**B.     Ground Two**

The Petition advances the following as Ground Two:

> Whether the admission of improper opinion evidence by a witness and the admission of inferences drawn by the same witness was prejudicial error.

Pet. at 7.  This claim appears to relate to Fencher's argument challenging testimony from Officer Towns.  S.A. 205–206.  During trial, Officer Towns testified that references to "Joe" and "Joey" in the recorded telephone conversations did not refer to the same person.  S.A. 205–206; 569–72.  In his arguments to the Appeals Court and the SJC, Fencher contended that the jury members themselves heard the recorded conversations, and thus Officer Towns' "'opinion' was unnecessary and infringed on the jury's fact finding function."  S.A. 44–51, 205–206.

The Appeals Court rejected Fencher's argument, reasoning that there was no prejudice because Fencher himself testified that he was not referred to as Joey.  S.A. 184; Fencher, 81 Mass. App. Ct. 1116 at *3.  Further, as discussed above, errors of state law that rise to the level of due process violations are exceedingly rare, and Fencher has failed to identify any clearly established Supreme Court precedent that is applicable to this issue.  In fact, Fencher has not advanced any arguments as to this claim in his memorandum.

On this record, the Court concludes that, as to this ground, the issues raised here are beyond this Court's review and, even if they were not, the Appeals Court's decision was not so arbitrary and capricious as to rise to the level of a constitutional violation.  Accordingly, the Petition should be denied as to Ground Two.

**C.     Ground Three**

The Petition advances the following as Ground Three:

> Whether the trial court erred in excluding from evidence correspondence between the two co-defendants which impeached

> the statements of the co-defendants that were admitted at trial and
> purported to implicate Mr. Fencher in plans to sell drugs.

Pet. at 8. Although Fencher does not address this ground in his memorandum, it appears that this claim relates to the exclusion of letters from Thomas to Armstrong. S.A. 76–83, 184; Fencher, 81 Mass. App. Ct. 1116, at *3. In his arguments to the Appeals Court and the SJC, Fencher asserted that the letters discussed drug dealing but did not mention Fencher, thus tending to show that he was not part of the criminal venture. S.A. 51–55; 206–207. He argued that the trial judge improperly excluded the letters as hearsay.[12] Id.

Under the Supreme Court's decision in Chambers v. Mississippi, "due process will sometimes require admission of hearsay statements made 'under circumstances that provided considerable assurance of their reliability.'" Hodge v. Mendonsa, 739 F.3d 34, 42 (1st Cir. 2013) (quoting Chambers v. Mississippi, 410 U.S. 284, 285 (1973)). However, the First Circuit has noted that "Chambers based claims have been consistently rejected by the courts. It is only in rare and unique circumstances that the exclusion of evidence under hearsay rules defeats the ends of justice and thereby violates the due process clause." Id. (citations and internal quotation marks omitted).

Here, the Appeals Court rejected Fencher's argument that the trial judge's exclusion of the letters constituted a violation of due process. The Appeals Court explained that "[g]iven the minimal probative value of introducing a communication for the purpose of showing what it does not mention," it did not find any abuse of discretion on the part of the trial judge. S.A. 184; Fencher, 81 Mass. App. Ct. 1116, at *3. The Appeals Court also held that even if there had been error, the error was not prejudicial in light of the ample evidence of Fencher's guilt, "including

---

[12] Respondent argues that because Fencher does not discuss Ground Three in his memorandum, he has abandoned this claim. Resp't Mem. at 2 n.2. Nevertheless, because Fencher is appearing pro se, the Court addresses the issue herein.

12

the police discovering him sitting on the cocaine and his driving the car from which Armstrong emerged to sell the drugs." Id. Further, the Appeals Court noted that Thomas' letter to Armstrong did mention Fencher, although not directly in the context of drug dealing. S.A. 185; Fencher, 81 Mass. App. Ct. 1116, at *3 n.12. Thomas stated that he was charged with violating his parole by meeting with someone named "Joe." Id. On this record, this Court concludes that there are no rare and unique circumstances that demand the admission of the excluded letters, particularly in light of their minimal probative value.

Accordingly, the issues presented here are beyond this Court's review and, even if they were not, the Appeals Court's decision as to this claim was not so arbitrary and capricious as to give rise to a constitutional violation. The Petition should be denied as to Ground Three.

### D. Claims Not Raised In The Petition

Fencher appears to raise three new claims in his memorandum in support of the Petition: (1) improper admission of the undercover officer's testimony that he heard Fencher's voice in the background when the officer called Armstrong to arrange the drug buy, see Pet. Mem. at 22–24; (2) prosecutorial misconduct in the form of improper referral to excluded evidence during closing argument and in arguments to the Appeals Court, see id. at 12–16; and (3) insufficient evidence regarding Fencher's conspiracy charge, which was dismissed by the Commonwealth, see id. at 20–22, 25–29.

A petition for habeas corpus must "'(1) specify all the grounds for relief available to the petitioner; (2) state the facts supporting each ground; [and] (3) state the relief requested,' and must 'substantially follow either the form appended to these rules or a form prescribed by a local district-court rule.'" Sullivan v. Saba, No. 10-CV-30194-MAP, 2012 WL 1409530, at *2 (D. Mass. Apr. 20, 2012) (quoting Rules Governing Section 2254 Cases in the United States District

Courts, Rules 2(c)–(d)). Further, "[i]t is the petition for a writ of habeas corpus, not subsequently filed memorandum, which defines the claim for habeas relief." Id. (citation omitted). Therefore, Fencher's new grounds for relief are barred because they were not included in the Petition, and they are presented for the first time in his memorandum.[13]

These new claims are also barred because Fencher has not exhausted his state remedies. "In recognition of the state courts' important role in protecting constitutional rights, the exhaustion principle holds, in general, that a federal court will not entertain an application for habeas relief unless the petitioner first has fully exhausted his state remedies in respect to each and every claim contained within the application." Adelson v. DiPaola, 131 F.3d 259, 261 (1st Cir. 1997) (citing Rose v. Lundy, 455 U.S. 509, 518–19 (1982)); accord 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . .").

A habeas petitioner bears the "heavy burden" of demonstrating the fulfillment of the exhaustion requirement. Barresi v. Maloney, 296 F.3d 48, 51 (1st Cir. 2002). In order to satisfy the exhaustion requirement, "[i]t is not enough merely to raise an issue before an intermediate court; one who seeks to invoke the federal habeas power must fairly present—or do his best to present—the issue to the state's highest tribunal." Mele v. Fitchburg District Court, 850 F.2d 817, 820 (1st Cir. 1988) (citations omitted). In Massachusetts, that standard is met "by 'fairly

---

[13] Fencher's new claims also fail because he has not followed the proper procedure for amending his petition. A habeas petition may be amended according to the Federal Rules of Civil Procedure. 28 U.S.C. § 2242. Where, as here, a responsive pleading has already been filed, an opposed amendment may only be granted by leave of court. Fed. R. Civ. P. 15(a). Fencher has not sought leave from the Court to amend his Petition. In addition, even if Fencher had properly sought to amend the Petition, they would be subject to dismissal as explained below.

presenting' a federal claim 'within the four corners of the [application for further appellate review to the SJC].'"[14] Clements v. Maloney, 485 F.3d 158, 162 (1st Cir. 2007) (citing Mele, 850 F.2d at 823); Adelson, 131 F.3d at 263 (in analyzing exhaustion, "the decisive pleading is the application for further appellate review . . . ."). Claims "omitted entirely from an [application for further appellate review] cannot be exhausted." See Mele, 850 F.2d at 820–23.

To preserve his new claims for federal habeas scrutiny, Fencher was obliged to try to bring them before the SJC. In this case, Fencher's application for further appellate review was based only on the grounds actually listed and raised in his Petition. Compare Pet. at 5, 7, 8 with S.A. 196–97 (listing identical issues). The new grounds for relief found in Fencher's memorandum were not presented to the SJC for review. Accordingly, those claims have not been exhausted.

## V. CONCLUSION

For the foregoing reasons, I recommend that the District Court deny the Petition.

## VI. REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Rule 72(b) of the Federal Rules of Civil Procedure, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within

---

[14] "Though the SJC and the [Appeals Court] have concurrent jurisdiction in many areas, and direct review in the SJC may be sought in certain cases, the usual appellate route in virtually all criminal matters leads first to the [Appeals Court]." Mele, 850 F.2d at 820 (internal citations omitted). "Once the [Appeals Court] has resolved a case, the losing party may seek further appellate review in the SJC, but the SJC can, generally speaking, accept or decline the proffer, as it chooses." Id. While review by the SJC is usually discretionary, a petitioner must give the SJC a fair opportunity to consider the claim in order to satisfy the exhaustion requirement. See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (holding that in order to satisfy the exhaustion requirement, a petitioner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate process," including any discretionary appeals that are an "established part of the State's appellate review process.").

fourteen days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b).  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) of the Federal Rules of Civil Procedure will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hosp., 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir. 1993).

/s/ Jennifer C. Boal_____
JENNIFER C. BOAL
United States Magistrate Judge